Estate of James R. Jewett, George F. Jewett, Executor v. Commissioner.
Estate of James R. Jewett v. Commissioner
Docket No. 1995.
United States Tax Court
1945 Tax Ct. Memo LEXIS 283; 4 T.C.M. (CCH) 274; T.C.M. (RIA) 45079; February 28, 1945
*283 Daniel L. Brown, Esq., 60 State St., Boston, Mass., Lawrence E. Green, Esq., and Raymond B. Roberts, Esq., for the petitioner. J. T. Haslam, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: This case involves a deficiency in the income tax of James R. Jewett for the year 1939 in the amount of $93,880.58. The deficiency is based upon respondent's determination that the income of three trusts, created by Margaret W. Jewett, wife of James R. Jewett and of which James R. Jewett was designated life beneficiary, should be included in his gross income for the taxable year. The stipulated facts, the most pertinent of which are set out in our findings, are by this reference found to be as stipulated. The following schedule indicates the adjustment made by the Commissioner: Additional Income
of Trust
Portion of Gross
Included by
Income of Trust
Commissioner
Description
Net Income
Included in
in Petitioner's
of Trust
of Trust
Petitioner's Return
Gross Income
Trust No. 1
$89,198.47
$20,250.00
$ 68,948.47
Trust No. 2
42,213.30
None
42,213.30
Trust No. 3
42,213.30
None
42,213.30
Total
$153,375.07
*284 General findings will be made, after which the inclusion in petitioner's gross income of the income of Trust No. 1 will be discussed. For convenience the facts with reference to Trusts No. 2 and 3 will be shown immediately preceding the discussion. Findings of Fact James R. Jewett, a resident of Falmouth, Massachusetts, died subsequent to the mailing of the notice of deficiency and petition was filed by the duly qualified executor of his estate. The return for the period here involved was filed with the collector for the district of Massachusetts. Margaret W. Jewett, formerly the wife of James R. Jewett but now deceased, during her lifetime created three trusts, one of which is dated December 24, 1931. The other two are dated December 14, 1934. The three trusts will be hereinafter referred to as Trust No. 1, Trust No. 2 and Trust No. 3. James R. Jewett was the life beneficiary of each trust. The relationship of the parties mentioned in the three trusts to Margaret W. Jewett, the settlor, was as follows: James R. Jewett
Husband
George F. Jewett
Son
Mary C. Jewett
Daughter-in-law
Edwin W. Davis
Nephew
Frederick K. Weyerhauser
Nephew
Margaret W. Jewett
Granddaughter
George F. Jewett, Jr.
Grandson
Daniel L. Brown
Legal Advisor
*285 Mary C. Jewett is the wife of George F. Jewett. Their only children, Margaret W. Jewett and George F. Jewett, Jr., were born July 5, 1929, and April 10, 1927, respectively. The pertinent Clauses of Trust No. 1 are as follows: "CLAUSE SECOND: The trustee shall pay the net income of the fund to my husband, JAMES R. JEWETT, quarterly or oftener during his life. "CLAUSE THIRD: Upon the death of my said husband * * * the trustee shall thereafter during the life of my son GEORGE F. JEWETT, pay to him quarterly or oftener the net income during his life. While my son is entitled to income he may from time to time by a writing or writings signed by him appoint the whole or any part or parts of the principal of the fund to himself or to any other person or persons either free of trust or upon such trusts as he deems proper either by way of alteration of the trust hereof or by way of creation of new trusts or new trust funds. He may release or alter this power, transfer it to another or others, or associate others with him in the right to exercise it. No exercise of any of these powers shall exhaust or diminish them. "CLAUSE FOURTH: Upon the death of my said son (or upon the death of *286 my said husband if my said son dies before my said husband), the trustee shall divide the remaining principal and all unpaid, accrued, and accumulated income of the fund into shares so that there shall be one share for each child of my son then living and one share for the issue then living of each deceased child of my said son. The trustee shall hold, manage, and dispose of these shares as follows: "A. The trustee shall distribute each share set aside for the issue of a deceased child to such issue per stirpes free of trust. "B. The trustee shall pay to each living child quarterly or oftener the net income of his or her share during his or her life, and upon his or her death shall distribute his or her share to his or her issue then living per stirpes free of trust. If there is no such issue then living, the trustees shall distribute said share to his or her living brothers and sisters, the issue then living of each brother or sister then dead to take free of trust its ancestor's share per stirpes. Any property distributed in accordance with the provisions of the preceding sentence to a deceased child's brother or sister for whom there is a trust share then in existence under *287 this instrument shall be added to the principal of said share. "C. If upon the death of the last surviving child of my said son there is no issue of mine living, the trustee shall distribute free of trust said principal and income equally to my brothers and sister then living, the issue then living of each brother or sister then dead to take its ancestor's share per stirpes. * * * * *
"CLAUSE SEVENTH: The beneficial interests are also subject to the following provisions: "A. So far as the trustee is directed to pay income or principal to any beneficiary he may make such payments directly to such beneficiary whether or not under age, may make such payments to the beneficiary's guardian, or conservator, or may expend the same for his use or benefit, and he shall have power to determine what expenditures are for the use or benefit of any beneficiary. "B. So far as the trustee is directed to pay income of any share or part to any beneficiary he may do so only with the consent of the Committee hereinafter created. Otherwise he shall accumulate said income and retain the accumulations on a separate account with power with the consent of the Committee to pay them out at a later *288 time or later times as if they were part of current income or to transfer them from time to time to principal. * * * * *
"CLAUSE EIGHTH: * * * But desiring the trustee to have assistance in the management of the trust, I hereby create in my husband JAMES R. JEWETT, EDWIN W. DAVIS, of Cloquet, Minnesota, and said DANIEL L. BROWN, herein referred to as the Committee, a joint power exercisable at any time or times and from time to time by any two of them by an instrument in writing to do the following things: * * * * "C. At any time or times when any person, other than my said husband or my said son is entitled to the income of any fund or share, the Committee may by a writing as aforesaid direct the payment to such person of any part or parts of the principal whereof he is entitled to receive the income and upon the execution of such writing the right to such principal shall forthwith vest in such person. "D. The consent of the Committee wherever required by this instrument shall be given in writing signed by any two of its number." During the taxable year James R. Jewett was trustee of Trust No. 1, having succeeded Daniel L. Brown who resigned as trustee in 1932 shortly *289 after the trust was created. The committee for this trust consisted of Daniel L. Brown, Edwin W. Davis and James R. Jewett. The net income of Trust No. 1 for the calendar year 1939 was $89,198.47 of which amount $20,250 was paid to James R. Jewett. Daniel L. Brown, one of the three members of the committee, on or about December 27, 1939, drew up the following document: "We. Edwin W. Davis and Daniel L. Brown, being two members of the Committee constituted under Clause Eighth of the above trust instrument, and as provided in Paragraph B of Clause Seventh of the said instrument, hereby approve and consent to the payment forthwith to James R. Jewett of Twenty Thousand Two Hundred Fifty ($20,250) Dollars of the income of this trust received in the year 1939. "Witness our hand and seals this 27th day of December, 1939. Edwin W. Davis (SEAL) Daniel L. Brown (SEAL)" Brown had drafted the trust as attorney for the settlor. He prepared and filed the income tax returns for Trust No. 1 and the personal income tax return for James R. Jewett for the year 1939. It was on his recommendation that James R. Jewett was paid only $20,250 out of the total income from Trust No. 1. It was his *290 custom, toward the end of each year, to consider James R. Jewett's income and the income of the trust and to suggest to Davis, another member of the committee, that they pay Jewett enough so that the greatest saving in income tax for him and the trust would be secured. James R. Jewett never made any demand upon the committee under Trust No. 1 that he be paid more than $20,250 of the income from this trust for 1939. The Commissioner determined that all of the income of this trust should be included in petitioner's gross income. Accordingly he added $68,948.47 ($89,198.47 - $20,250.00). Opinion Did the Commissioner err in including the income of this trust in petitioner's gross income under the applicable provisions of the Internal Revenue Code? [1] The petitioner insists that he did. He argues that Clause Second of this trust, which directs the trustee to pay the net income to James R. Jewett "quarterly or oftener during his life", is limited by Clause Seventh paragraph E, which, he urges, nullifies the direction of Clause Two to distribute the income currently to the beneficiary and provides that income can be distributed only with the consent of the committee, failing which it *291 must be accumulated. The difficulty with this construction is that it fails to give effect to the intention of the donor as expressed in the instrument and ignores its plain language. The trust instrument provides that the income be paid currently to the donor's husband James R. Jewett, for life and upon his death to the donor's son, George F. Jewett, currently for his life. At the death of the survivor of James and George the trustee is directed to divide the remaining principal *292 and all unpaid, accrued and accumulated income into shares, so that there shall be "one share for each child of my son [George] then living and one share for the issue then living of each deceased child," each living child to be paid quarterly or oftener the net income of his or her share during his or her lifetime. The trust instrument then provides (Clause Seventh B) that so far as the trustee is directed to pay the income of any "share or part" to any beneficiary "he may do so only with the consent of the Committee hereinafter created." Otherwise such income must be accumulated and may be paid out at a later date or added to principal only with the consent of the committee. Obviously the limitation in Clause Seventh applies only to income from a "share or part" to which the son's children or their issue might become entitled and has no reference whatever to the income from the "fund" which is to be paid over currently to the husband or son of the donor during the lifetime of each under the provisions of Clause Second and Third. This construction is further supported by Clause Eighth C, which expressly limits the requirement of the committee's consent to the payment of income *293 to persons "other than my said husband or my said son * * *." We are therefore of the opinion that all of the income from Trust No. 1 was payable to James R. Jewett, currently, during the taxable year and that the action of the committee in limiting payment to him to $20,250 so as to effect the greatest saving in income tax for him and the trust, was mere super-erogation. It follows that the Commissioner committed no error in including all of the income of this trust in the beneficiary's gross income. Findings of Fact Trusts Number 2 and 3 are identical in most respects, the former naming the donor's daughter-in-law Mary C. Jewett as the income beneficiary for life following the death of James R. Jewett after which the income is to be paid to George for life, donor's granddaughter Margaret W. Jewett being the named beneficiary to whom the principal and accumulated income is to be paid upon the death of James, George and Mary. The latter trust names the donor's son George as the income beneficiary for life following the death of James, after which the income is to be paid to Mary for life, donor's grandson George, Jr., being the one named to received the principal and accumulated *294 income upon the death of James, George and Mary. For present purposes it will be sufficient to set out the provisions of Trust Number 2. It provides, inter alia: "CLAUSE SECOND: The trustee shall pay the net income of the fund to my husband, JAMES R. JEWETT, quarterly or oftener during his life. "CLAUSE THIRD: Upon the death of my husband the trustee shall pay the net income to my daughter-in-law, MARY C. JEWETT, quarterly or oftener during her life. "CLAUSE FOURTH: Upon the death of the survivor of my said husband and my said daughter-in-law the trustee shall pay the net income to my said son quarterly or oftener during his life. * * * * *
"CLAUSE SIXTH: The beneficial interests are also subject to the following provisions: "A. So far as the trustee is directed to pay income to any beneficiary he may in his discretion accumulate said income or any part or parts thereof and retain the accumulations on a separate account, with discretionary power to pay them out at a later time or later times as if they were part of current income, or to add them at any time or times to principal. When my said son is both beneficiary and trustee or when my said daughter-in-law is both *295 beneficiary and trustee, each decision as to whether current income shall be paid to my said son or my said daughter-in-law, as the case may be, or accumulated, and whether any, and if so how much, accumulated income shall be paid to my said son or my said daughter-in-law, as the case may be, shall be made by both trustees; and if the trustees disagree, by a majority of the Committee. If a majority of the Committee do not agree, the income concerning which the dispute has arisen, shall be added to, or retained as, accumulated income. * * * * *
"CLAUSE SEVENTH: I give to the trustee hereunder and his successors the following powers, rights and exemptions in addition to and not in limitation of any given otherwise in this instrument or by rules of law and make the following provisions concerning them: * * * * *
"G. He may decide irrespective of rules of law what is income or principal and all questions between income and principal even to the extent of deciding that any receipt or charge or any portion thereof determined by law to be income or a charge against income shall be capital or a charge against capital, or vice versa. He may decide irrespective of rules of law *296 what, if any, deduction shall be made from income for depreciation, obsolescence, and amortization. * * * * *
"CLAUSE EIGHTH: I hereby create in my said husband, James R. Jewett, my said son, George F. Jewett, and my said daughter-in-law Mary C. Jewett, herein referred to as the Committee, a joint power exercisable from time to time by any two of said Committee by a signed instrument in writing. I direct that each such writing shall forthwith be delivered to the trustee hereunder but such delivery shall not be requisite to its taking effect. This Committee by two of its members shall have the power so exercised to do the following and the following provisions shall apply to them: "A. To change and alter any of the trusts of said fund and declare new trusts of the property in any way or manner and to change and alter any and all the provisions of this instrument including the power to revoke and cancel any and all of said trusts and any or all of said provisions, provided that no change, revocation, alteration or cancellation shall be made which revests in me, MARGARET W. JEWETT, title to any part of the corpus or income of the trust fund." The net income of Trust No. 2 for *297 the calendar year 1939 was $42,213.30, no portion of which was paid or credited to James R. Jewett during that year. George F. Jewett was trustee of this trust and the committee consisted of George F. Jewett, his wife Mary C. Jewett and his father James R. Jewett. During the calendar year 1939 George F. Jewett was trustee of Trust No. 3 and the committee consisted of George F. Jewett, Mary C. Jewett and James R. Jewett. The net income from this trust for the calendar year 1939 was $42,213.30, no portion of which was paid or credited to James R. Jewett. In determining the deficiency the Commissioner added to the income reported by James R. Jewett all of the income from Trust No. 2 in the amount of $42,213.30, and all of the income from Trust No. 3 in the amount of $42,213.30. Opinion It is obvious that the donor in the creation of these trusts was primarily interested in providing for her son and his family. The payment of the income to her husband for his life was only incidental. Unlike Trust No. 1, no provision was contained in either of these trusts directing that upon the death of the income beneficiaries the principal and income be divided into parts; nor is there any *298 provision inferentially limiting the action of the committee to a time antecedent to the death of the donor's husband. In each of these trusts the provision in Clause Sixth A, limiting the beneficial interests, necessarily applies to all, including that of James R. Jewett. The trustee may, in his discretion, accumulate the income. The trustee under each is George, a successor life beneficiary and husband or father of the beneficiaries other than James. Clearly he had an interest adverse to that of his father. He and his wife, as members of the committee, could, if they had seen fit to do so, revoke the trust and exclude James from all interest in the property. The circumstance that James was likewise a member of the committee was small protection to him; for complacency of his son and daughter-in-law to his wishes cannot be presumed. Cf. . It is true that there appears to be some inconsistency between Clause 2 of these trust instruments and other clauses. Respondent characterizes them as being "Januslike", suggesting that the provisions were purposely made ambiguous so that some advantage could be secured, tax-wise, by adopting *299 the postulate that the income was distributable in its entirety to James if this seemed to be to his and the trusts' advantage. The record does not show that any such claim has ever been made nor is any estoppel suggested. The fact that a saving in tax results because of the construction which the representative of the taxpayer now espouses does not indicate that the provisions were incorporated in the trust instruments for the sole purpose "of enabling the interested parties to save Federal income tax where it is to their advantage to argue that the distribution of income * * * is discretionary rather than mandatory", as respondent, suggests upon brief, nor, in our judgment does it call for application of the principles applied in and . The respondent erred in including in the gross income of James R. Jewett the 1939 income of trusts number 2 and 3. Cf. ; ; Decision will be entered under Rule 50. Footnotes
1. SEC. 162 (b). There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year; * * *.↩